IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**ERICK SMITH**                                                                                          **PLAINTIFF**

v.                                    **CASE NO. 3:23-CV-00144-BSM**

**BLYTHEVILLE SCHOOL DISTRICT**                                           **DEFENDANT**

### ORDER

The Blytheville School District's motion for summary judgment [Doc. No. 22] is granted and Erick Smith's Fair Labor Standards Act and Arkansas Minimum Wage Act claims are dismissed with prejudice.

### I. BACKGROUND

The Blytheville School District employs bus drivers, such as Erick Smith, primarily to transport students to and from school during a certain number of contracted hours on 178 school days, *i.e.*, one school year. Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ¶ 1, Doc. No. 24 ("Dist. SUMF"). Most district bus drivers are contracted for four, four and one-half, or five hours, depending on whether their assigned route is in or near the city or out in the surrounding county. *Id.* ¶ 2. Each driver's contracted hours are split between a morning run and an afternoon run. *Id.* ¶ 4. The district currently has thirteen routes and twelve bus drivers. *Id.* ¶ 5.

Although bus drivers' contracted hours consistently exceed their actual work time on morning and afternoon runs, the district compensates bus drivers for all contracted hours on every school day worked and counts all of their contracted hours as work time when

calculating overtime in any given workweek. *Id.* ¶ 9. In the rare event that a morning or afternoon run takes longer than a bus driver's contracted time, the district requires the bus driver to use a handwritten timesheet to report the hours worked. *Id.* ¶ 11.

In addition to transporting students to and from school during their contracted hours, bus drivers have the opportunity to perform extra work such as transporting students to and from after-school programs, field trips, and other off-campus school-related activities. *Id.* ¶ 12. Extra duty work performed outside of bus drivers' contracted hours is paid at an hourly rate, as approved by the Blytheville school board and set forth in the district's salary schedule for the subject school year. *Id.* ¶ 13. The district requires bus drivers to accurately report all extra duty hours worked using handwritten timesheets and to approve their timesheets at the end of each payroll period. *Id.* ¶ 14.

During the 2022–2023 school year, the district initially paid bus drivers $20 per hour for all extra duty work. *Id.* ¶ 15. On February 23, 2023, the board approved a separate hourly rate for bus driver wait time, so the district subsequently started paying drivers $11 per hour for time spent waiting at off-campus locations to transport students back to the district. *Id.* ¶ 16.

Erick Smith worked as a bus driver for the district from 1999 through the 2022–2023 school year. *Id.* ¶ 17. Smith was contracted for four hours during the 2022–2023 school year and was paid $14,240 for those contracted hours pursuant to the terms of his school employee contract. *Id.* ¶ 18; *see* Doc. No. 22-2 at 37 (contract). Smith used handwritten timesheets to report his extra duty work time and approved his timesheets. Dist. SUMF ¶ 19.

Despite his displeasure with the new wait time rate of $11/hour, Smith admits that he was paid for extra duties outside of his normal contract hours. *Id.* ¶ 47; Response to Defendant's Statement of Undisputed Material Facts ¶ 20, Doc. No. 26 ("Smith SUMF Resp."). Between his morning run and afternoon run for the district, Smith worked as a manager at a Kentucky Fried Chicken (KFC) in Blytheville. Dist. SUMF ¶ 21. Smith's schedule at KFC was 8:00 a.m. to 2:00 p.m., Monday through Friday. *Id.* ¶ 22. Smith did not miss a week of work in the 2022–2023 school year. *Id.*

In late 2022, the district's director of finance alerted the district of a pattern of work time being recorded in bus drivers' timesheets during periods when they had no reason to be driving, including while school was in session (and while Smith was working at KFC) and beyond the time students would have been dropped off after the school day. *Id.* ¶ 27; Smith SUMF Resp. ¶ 27. This discovery led to an internal investigation by Cliff Miller, the district's director of operations and safety. Dist. SUMF ¶ 28. As part of the investigation, Miller analyzed bus drivers' timesheets, reviewed camera footage on district buses, and conducted interviews. *Id.* ¶ 29. Miller determined that when bus drivers covered an absent driver's route on a given school day, two or four extra duty hours were added to their timesheets despite the drivers having completed both their own route and the absent driver's route well within their already-compensated contracted hours. *Id.* ¶ 30; Smith SUMF Resp. ¶ 30. Additionally, the drivers were verifiably not on school buses during the hours they claimed to have been working extra duty. Dist. SUMF ¶ 31.

The investigation ultimately revealed that the transportation department's systematic

approval of inaccurate timesheets—based on past practices that had not been scrutinized or challenged to date—allowed district bus drivers to be compensated for improperly documented time. *Id.* ¶ 32; Smith SUMF Resp. ¶ 32. In the 2021–2022 school year alone, the district paid $468,153.87 in wages to bus drivers—more than double their total contracted amount of $223,860.86. Dist. SUMF ¶ 33. At the district's direction, around mid-January 2023, the transportation department ceased its practice of allowing bus drivers to record extra duty hours not actually worked. *Id.* ¶ 34; Smith SUMF Resp. ¶ 34.

On March 29, 2023, Smith submitted to Miller a grievance claiming that he worked twenty hours from January 9, 2023 to January 13, 2023 and had not received payment. Dist. SUMF ¶ 35. In reviewing the grievance, Miller learned that Smith had covered another driver's route during the subject workweek, and that he had completed his route and the absent driver's route within his contracted time each school day. Miller therefore denied Smith's grievance. *Id.* ¶¶ 36–37. Smith disputed that the time he spent covering the absent driver's route was part of his contracted time, and appealed to the school board, which held a special meeting to discuss Smith's grievance. *Id.* ¶ 38; Smith SUMF Resp. ¶ 36. At the grievance hearing, Smith informed the board that before January 2023, bus drivers had always been compensated for covering routes of other drivers and that he had hours for which he was not paid. Dist. SUMF ¶ 39. When asked about specific time entries for the alleged twenty unpaid hours he worked, Smith admitted that he was not dropping off students or on the bus during some of the times reflected in his timesheet. *Id.* ¶ 40. Smith, however, contends that he was just following the district's standard practice at the time. Smith SUMF

Resp. ¶ 40. Smith also stated that he was able to complete his route and the missing driver's route within a two-hour time period. *Id.* ¶ 41; Dist. SUMF ¶ 41. Smith stated that it took him roughly thirty to thirty-five minutes to complete his route and about ten to fifteen minutes to pick up the other route. Dist. SUMF ¶ 42; Smith SUMF Resp. ¶ 42. The board unanimously denied Smith's grievance. Dist. SUMF ¶ 43.

Smith is suing the district for violating the Fair Labor Standards Act (FLSA) and the Arkansas Minimum Wage Act (AMWA). The district is moving for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

The district's motion for summary judgment is granted and Smith's FLSA and

AMWA claims are dismissed with prejudice.

    A.    <u>Fair Labor Standards Act</u>

Summary judgment is granted on Smith's FLSA claim because he fails to show that he was not paid overtime or minimum wage compensation.

"The FLSA requires employers to pay overtime of at least one and one-half times the regular pay rate for employees who work over forty hours in one workweek." *Grage v. Northern States Power Co.-Minn.*, 813 F.3d 1051, 1054 (8th Cir. 2015) (citing 29 U.S.C. § 207(a)(2)). Additionally, the "FLSA requires the payment of a minimum wage to employees who in any workweek are engaged in commerce or in the production of goods." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 50 (8th Cir. 1984) (citing 29 U.S.C. § 206(a)) (cleaned up). $11 is the applicable minimum wage rate in Arkansas. *See* Ark. Code Ann. § 11-4-210(a)(3).

Summary judgment is granted on Smith's FLSA claim because he fails to show that he was not paid overtime or minimum wage compensation. Although Smith may disagree with the district's decision to lower the wait time rate for extra duty work and to remove all incentives for bus drivers to cover for absent drivers, the undisputed material facts conclusively show that the district did nothing to violate the FLSA. Indeed, liability under the FLSA "depends not upon formal or agreed arrangements between employer and employee but upon the number of hours the employee works for the employer's benefit." *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 n.2 (8th Cir. 1986). Nothing in the record shows that Smith was not paid overtime. "Moreover, the FLSA does

not require employers to adhere to a particular formula for determining employees' compensation so long as the formula ultimately complies with the FLSA's minimum wage and overtime requirements." *Zimmerli v. City of Kan. City, Mo.*, 996 F.3d 857, 865 (8th Cir. 2021). Indeed, the FLSA "does not prohibit changes in wage rates." *Anderson v. City of Bristol, Tenn.*, 6 F.3d 1168, 1173 (6th Cir. 1993); *see Wethington v. City of Montgomery*, 935 F.2d 222, 228 (11th Cir. 1991) ("Nothing in the Act prohibits such a reduction.").

    B.    <u>Arkansas Minimum Wage Act</u>

Summary judgment is granted on Smith's AMWA claim for the same reasons that it is granted on his FLSA claim. *See Carter v. Primary Home Care of Hot Springs, Inc.*, No. 6:14-CV-6092, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015) (citations omitted) ("The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner.").

## IV. CONCLUSION

For these reasons, the district's motion for summary judgment is granted and Smith's FLSA and AMWA claims are dismissed with prejudice.

IT IS SO ORDERED this 20th day of March, 2025.

_____
UNITED STATES DISTRICT JUDGE